### 14305. GRIFFIN v. THE STATE.

LUKE, J. 1. The indictment in this case was not subject to demurrer upon the ground that the indictment charged two separate and distinct offenses in the same count, to wit, the offense of adultery and fornication, and living in a state of adultery. See *Heath* v. *State*, 91 *Ga.* 126 (16 S. E. 657); *Lawrence* v. *State*, 10 *Ga. App.* 786 (74 S. E. 300); *Nalley* v. *State*, 11 *Ga. App.* 15 (74 S. E. 567).

2. The evidence in this case was not sufficient to authorize the defendant's conviction. The only testimony which would authorize the defendant's conviction would have shown a violation of section 372 of the Penal Code in a county other than that in which he was being tried. For the reason that the evidence did not authorize the verdict, it was error for the court to overrule the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED APRIL 12, 1923.

Indictment for adultery and fornication; from Colquitt superior court — Judge Thomas. January 26, 1923.

The indictment charged C. L. Griffin with " the offense of adultery and fornication; for that the said accused did, on the 15th day of September.in the year 1922, in the county [of Colquitt] aforesaid, unlawfully have sexual intercourse with, and did also live together in a state of adultery with " a named person, " they not being then and there lawfully intermarried, and he, the said C. L. Griffin, being then and there a married man, and she," the other person named, " being then and there a married woman, contrary to the laws of said State," etc. The verdict was " guilty."

Except testimony as to what occurred in another county " about two years or more " before the trial, the only evidence relied on to

show sexual intercourse between the defendant and the woman named in the indictment was testimony of her brother as to having seen the defendant (her cousin) go with her into and out of a bedroom in which the defendant slept at the home of her mother, and testimony as to statements of the defendant that her children were his children. The indictment was filed and the case tried in October, 1922. From the evidence it appeared that the woman was married and had been living in Thomas county, but in 1921 was living with her mother and sisters at the mother's home in Colquitt county. It was testified that "in the summer" of that year (according to her mother's testimony, "about the last of July") she and her husband separated, and "about May, 1922," a baby was born to her. She already had two children. The defendant lived with his wife in Thomas county, a few miles from where the family mentioned above were living. Her brother testified: "I live about a mile and a half from my mother's house. Coleman [the defendant] has been visiting my mother's house about seven or eight years or longer. I do not know of any other special man who has been visiting there during that time. Coleman Griffin has been spending the night there up until something like two or three months ago. He would visit there every day or two or every night or two, regularly all along. It is my opinion . . that he was visiting Hattie [the woman named in the indictment]. My opinion is based on the fact that he never did fool with any of the rest of them, and did not take up any time with any of the rest of them. When he would spend the night there he would sleep in the back room where there was one bed. I do not know who would occupy the room with him. . . Sometimes he would go in there with Hattie. I did not see any of the family except Hattie go in there with him. I have seen him come out of the room with Hattie. . . One morning right soon I got over there, . . about seven or eight months ago. Part of the family was up. . . After I got there I saw Coleman Griffin come out of the room with Hattie. I did not see Coleman get up. . . It was the same room that Coleman Griffin occupied all the time that he was there, and that is all I know about it. . . It was between daylight and sunup." They were dressed. "I did not see them go in the room; I do not know whether they went into the room five minutes before they came out

or not. . . That was the only time that I have ever seen them coming out of the room. . . I have seen them go in about two different times at night. I would not spend the night there. . . The other members of the family were fixing to go to bed and I was fixing to leave to go home. That was true both times. That has been going on for about seven or eight years, and I said something about it and it did not have any effect. . . I have heard Coleman Griffin say that he was the father of Hattie's children. . . I do not remember that I ever heard him say that all of them was his. What I heard him say was that he claimed the two oldest ones."

This witness testified also that " something like two years ago," " about two years or more," he and his father went to visit his sister Hattie in Thomas county, and " when it came to retire " she and the defendant " went on and took the same bed just ordinarily like they were man and wife. That was the only time I ever saw them go to bed. . . Coleman was not living down there." The woman in question,. in her testimony, and the defendant, in his statement at the trial, denied the testimony as to improper conduct between them, and her mother and sister testified in contradiction of the State's witness.

*James L. Dowling,* for plaintiff in error, cited: (as to sufficiency of evidence) 4 *Ga. App.* 559; 84 *Ga.* 461; 5 *Ga. App.* 7; Id. 176; 2 *Ga. App.* 113; 12 *Ga. App.* 529; 126 *Ga.* 563; (as to the demurrer) 87 *Ga.* 522; 4 *Ga. App.* 559 (1); 91 *Ga.* 126 (distinguished).

*Clifford E. Hay, solicitor-general,* contra, cited: 91 *Ga.* 126; 81 *Ga.* 196; 97 *Ga.* 192; 122 *Ga.* 173 (1).